IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DANNY RAY BROWN, #130502, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MARY COOKS, et al., )<br>)<br>    Defendants. ) | CASE NO. 3:13-CV-483-TMH<br>[WO] |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Danny Ray Brown ["Brown"], a state inmate, in which he challenges the adequacy of medical treatment provided to him for a head injury suffered during his employment while on work release.[1] On September 26, 2013, Brown filed a second motion for injunction seeking emergency medical treatment (Doc. No. 28), and, on October 10, 2013, filed a third motion for injunction again seeking emergency medical treatment (Doc. No. 34). The court construed each of these documents as a motion for preliminary injunction.[2]

---

[1] At the time of his injury, Brown was incarcerated at the Alex City Work Release Facility ["ACWR"]. He is now incarcerated at the Frank Lee Work Release Facility ["FLWR"].

[2] In these motions, Brown requests issuance of immediate injunctions requiring that the defendants provide him specific types of medical treatment for his head injury, i.e., referral to a free-world neurologist for evaluation and performance of an "MRI, and or Cat-Scan [of] his head, neck and shoulder areas" to determine the seriousness of his conditions. *Doc. No. 28* at 2; *Doc. No. 34* at 2.

On October 10, 2013, the defendants filed a response in opposition to the plaintiff's requests for preliminary injunctive relief supported by relevant medical records and an affidavit from an attending physician.[3]  In this response, the defendants maintain that since his head injury Brown has had continuous access to medical care and has received medical treatment for this injury and his complaints of neck/shoulder pain in accordance with the professional judgment of health care personnel.  The defendants therefore argue that issuance of a preliminary injunction is not warranted as Brown does not meet each of the requisite elements for issuance of a preliminary injunction.

Upon review of the latest motions for preliminary injunction (Doc. No. 28 and Doc. No. 34) and each of the responses filed by the defendants, the court concludes that the aforementioned motions for preliminary injunction are due to be denied.

## II.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Brown demonstrates each of the following prerequisites:  (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the

---

[3] On September 23, 2013, the defendants had previously filed a response addressing similar claims presented by Brown in an earlier motion for preliminary injunction.  The court entered a Recommendation on October 7, 2013 that such motion be denied. *Doc. No. 32*.

threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306  *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983).  "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to the four requisites."  *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion).  The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements.  *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").  "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.'  *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of*

*Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir.1990)." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

### III.  DISCUSSION

Brown seeks issuance of preliminary injunctions requiring immediate medical treatment in the form of referral to a free-world physician for evaluation and the performance of various radiological scans. *Doc. No. 28* at 2; *Doc. No. 34* at 2. In response to the requests for preliminary injunctive relief, the defendants maintain that Brown has received all necessary and appropriate treatment for his head injury and complaints of pain in his neck and shoulder. *Doc. No. 24*; Doc. *No. 33*. The affidavits of Dr. Bobby A. Crocker, the Regional Medical Director for Corizon Health, Inc. who is currently serving as a physician at the Staton Correctional Facility, address Brown's allegations as follows:

> It is my understanding that Mr. Brown is dissatisfied with the level of medical care afforded him at FLWR. Specifically, Mr. Brown disputes the treatment provided to him for headaches allegedly stemming from a minor head injury he sustained when a piece of lumber fell on his head while working as a laborer for a lumber company. Based upon my review of Mr. Brown's medical records and the care I and the medical staff provided to Mr. Brown during his incarceration at FLWR, I can state to a degree of medical certainty that Mr. Brown received more than [an] adequate degree of medical treatment during his incarceration at FLWR for his headaches. Moreover, I cannot find any reason for Mr. Brown to claim that the medical treatment afforded him has been anything less than complete, appropriate and acceptable in any respect.
> Mr. Brown transferred from ACWR to FLWR on August 17, 2013. Mr. Brown first voiced complaints regarding headaches to the FLWR medical staff on September 4, 2013, and the medical staff evaluated Mr. Brown that same day. During this evaluation, Mr. Brown did not exhibit any

signs of trauma, damage or injury. Additionally, Mr. Brown was alert and oriented to person, place and time, exhibited a normal gait and had equal hand pressure and facial symmetry. Following this evaluation, the medical staff provided Mr. Brown with a ten (10) day prescription for I-Prin (Ibuprofen) and referred Mr. Brown for further evaluation by the nurse practitioner.

Consistent with the medical staff's referral, the nurse practitioner at FLWR physically examined Mr. Brown on September 17, 2013, for his continued complaints of headaches. During this examination, Mr. Brown indicated he suffered pressure style discomfort to the front of his head, the back of his head and behind his ear. In addition, Mr. Brown stated "pain off" medication effectively eliminated his discomfort. Mr. Brown did not exhibit any signs of trauma, damage, injury or other abnormality at the examination. Following this examination, the nurse practitioner ruled out an upper respiratory infection or the medical need for diagnostic imaging and entered orders prescribing Mr. Brown with his requested acetophenamin (Pain Off).

Because Mr. Brown continued to express complaints regarding headaches, on September 19, 2013, I physically examined Mr. Brown. At this examination, Mr. Brown stated he has continued to experience headaches since May 2013 and Mr. Brown complained of right shoulder pain. I examined Mr. Brown's head and right shoulder and did not discover[] any signs of trauma, damage or abnormality. Given Mr. Brown's continued use of over-the-counter style headache medications, I cautioned Mr. Brown about rebound headaches. Rebound headaches, or medication-overuse headaches, are caused by frequent use of headache medication. Headache pain relievers offer relief for occasional headaches but if a patient takes them more than a couple of days a week, the patient may trigger rebound headaches. To stop rebound headaches, a patient must reduce or stop taking the headache medication. Some patients exhibit signs of drug withdraw[al] if they abruptly stop taking headache medication. However, a long-acting analgesic or anti-inflammatory, such as naproxen or Excedrin taken twice a day, can be used to ease headaches during the withdrawal period.

Following my physical examination of Mr. Brown, I entered an order prescribing Mr. Brown Excedrin migraine twice a day for two weeks. In addition, I entered an order for Mr. Brown to undergo an x-ray of his right shoulder to fully diagnose his shoulder complaints. To the extent Mr. Brown continues to seek medical attention and care, the FLWR medical staff, the

> Staton medical staff and I will continue to provide Mr. Brown with the necessary medical attention, care and treatment.
>
> .... With regard to Mr. Brown's specific allegations, neither I nor the medical staff neglected him in any way when he voiced complaints regarding headaches. The medical staff routinely evaluated and examined Mr. Brown's head and prescribed medications when appropriate. The medical staff has not at any time deliberately ignored any medical complaints or request made by Mr. Brown....

*Defendants' Attachment 1 to the Response to Plaintiff's Initial Motion for Preliminary Injunction - Doc. No. 24-1* at 6-9 (citations to medical records omitted).

In a subsequent affidavit filed in response to Brown's second motion for preliminary injunction, Dr. Crocker continues his assessment of the treatment provided to Brown.

> It is apparent that Mr. Brown is no longer utilizing the existing medical processes and procedures to request medical treatment. Mr. Brown did not file a sick call request form pursuant to the long-standing medical procedures at the Frank Lee Work Center ("FLWR"), but instead chose to file a motion with the Court.
>
> On October 2, 2013, I conducted a follow-up examination of Mr. Brown. Consistent with my prior interactions with Mr. Brown, he voiced complaints of headaches and shoulder pain, but a full physical examination did not reveal any injury, damage, trauma or other underlying medical condition which could be the cause of his complaints regarding his head. There were no contusions, bruising, swelling or other physical signs indicating any type of injury or medical issue of any kind. However, there was decreased range of motion in his right shoulder. As with his prior exams, Mr. Brown was alert and oriented to person, place and time, exhibited a normal gait and had equal hand pressure and facial symmetry. A true and correct copy of the October 2, 2013 medical record is attached hereto as Exhibit A. As a physician with over 15 years of experience in correctional health care, I have seen numerous patients with head injuries as well as on-the-job injuries to the head and shoulders. I am well-aware of the various examination techniques to identify underlying head injuries, which could lead to persistent headaches and even neurological deficits. However, Mr.

> Brown's examinations have not revealed any objective data or findings upon which I can conclude that he is suffering from the after effects of any head injury of any kind. I cannot identify any basis upon which any physician (even a physician in a private medical clinic) would send a patient like Mr. Brown for an MRI or CT scan of his head, neck or shoulders.
>
> Because Mr. Brown continues to complain of shoulder weakness and limited range of motion, I elected to seek an evaluation by an off-site orthopedic specialist. Upon referral to this orthopedic specialist, any additional care with respect to Mr. Brown's shoulders will be at the recommendation of the off-site orthopedic specialist. Because of existing security protocols, I am not authorized to disclose the date or time of any appointment for any off-site medical services provided to any inmate. Therefore, I cannot state the date upon which Mr. Brown may be given an appointment.
>
> As stated previously, there is no medical evidence of any kind to support the allegations made by Mr. Brown. I along with the other members of the medical staff have not neglected him in any way when he voiced any complaints or requested any medical attention. We have responded to every complaint raised by Mr. Brown with a thorough and meaningful evaluation of his condition and his complaints. We have provided him medication to alleviate the discomfort he has reported to us. We have not at any time deliberately ignored any medical complaints or request made by Mr. Brown. I can state to a reasonable degree of medical certainty that I and the members of the medical staff have provided Mr. Brown with all of the necessary medical attention, care and treatment which he required and will continue to do so during the term of his incarceration.

*Defendants' Attachment 1 to the Response to Plaintiff's Second Motion for Preliminary Injunction - Doc. No. 33-1* at 1-3. The synopsis of treatment provided to Brown as detailed in Dr. Crocker's affidavits is confirmed by the medical records attached to the responses. *Defendants' Attachment 2 to the Response to Plaintiff's Initial Motion for Preliminary Injunction - Doc. No. 24-2* at 1-6; *Defendants' Exhibit A to the Response to Plaintiff's Second Motion for Preliminary Injunction - Doc. No. 33-1* at 5.

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court finds that Brown has failed to demonstrate a substantial likelihood of success on the merits of his claims. Brown also fails to demonstrate a substantial threat that he will suffer the requisite irreparable injury absent issuance of a preliminary injunction. The third factor, balancing potential harm to the parties, weighs more heavily in favor of the defendants as issuance of the requested injunction would adversely impact the ability of health care personnel to provide medical treatment to the plaintiff in accordance with their professional judgment. Finally, the public interest element of the equation is a neutral factor at this juncture. Thus, Brown has failed to meet his burden of demonstrating the existence of each prerequisite necessary to warrant issuance of a preliminary injunction.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motions for preliminary injunction filed by the plaintiff on September 26, 2013 (Doc. No. 28) and October 10, 2013 (Doc. No. 34) be DENIED.

2. This case be referred back the undersigned for additional proceedings.

It is further

ORDERED that on or before November 22, 2013 the parties may file objections to the Recommendation. Any objection must specifically identify the findings in the Recommendation objected to. Frivolous, conclusive or general objections will not be

considered by the District Court. The parties are further advised that this Recommendation is not a final order of the court and, therefore, it is not appealable. Failure to file written objections to the proposed findings in the Recommendation shall bar the party from a de novo determination by the District Court of issues addressed in the Recommendation and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all decisions of the former Fifth Circuit issued prior to September 30, 1981.

    Done this 7th day of November, 2013.

                                            /s/Terry F. Moorer
                                            TERRY F. MOORER
                                            UNITED STATES MAGISTRATE JUDGE